Randal S. Mashburn
U.S. Bankruptcy Judge
Dated: 8/2/2024

# IN THE UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| John Preston Thompson, | ) | Case No. 3:23-bk-04259 |
| | ) | Chapter 7 |
| Debtor. | ) | Judge Randal S. Mashburn |

| | | |
|---|---|---|
| Diana Mey, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. Proc. No. 3:24-ap-90016 |
| | ) | |
| John Preston Thompson, | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION IN SUPPORT OF ORDER
### DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Diana Mey seeks a ruling on summary judgment that collateral estoppel bars defendant from contesting the factual findings by another court that she argues establish "willful and malicious injury" under 11 U.S.C. § 523(a)(6), thus rendering the debt from the prior judgment nondischargeable. The judgment against the defendant, John Preston Thompson, was based on violation of state and federal statutes by making robocalls to Ms. Mey. In deciding whether the prior judgment establishes willful and malicious injury under bankruptcy law, Ms. Mey would also have this Court consider findings by the other court related to discovery abuses by Mr. Thompson and his fellow defendants that led that court to enter default judgment against the defendants as a sanction.

After considering the prior judicial findings in support of the judgment for violation of state and federal statutes and associated damage awards, this Court considers the application of collateral estoppel to be inappropriate because the legal

standards for the damage awards differ from the standard for finding a willful and malicious injury under § 523(a)(6). Further, collateral estoppel does not apply to the discovery-related findings because they were not necessary or essential to the monetary judgment awarded to Ms. Mey.

## PROCEDURAL BACKGROUND

In 2019, Ms. Mey filed suit against Mr. Thompson and multiple other individual and business defendants in West Virginia state court, and a defendant removed the action to the U.S. District Court for the Northern District of West Virginia (the "West Virginia Court"). The complaint in place at the time of judgment was the Second Amended Complaint.

Ms. Mey alleged violations of the federal Telephone Consumer Protection Act ("TCPA") and its state counterpart, the West Virginia Consumer Credit and Protection Act ("WVCCPA"). She also alleged that the individual defendants and their businesses were acting as a joint enterprise and as alter egos of one another in carrying out abusive and deceptive telemarketing schemes.

Mr. Thompson and the other defendants participated in the litigation, but in a manner that the West Virginia Court found not to be in good faith. On January 4, 2022, the West Virginia Court entered an order granting Ms. Mey's motion for sanctions for discovery abuse and, as a sanction, struck defendants' pleadings. Ms. Mey focuses heavily on the West Virginia Court's findings that defendants engaged in a pattern of concealing discoverable material and did not engage in discovery with good faith.

After entry of the January 4, 2022, order, Ms. Mey discovered additional information that had not been disclosed in discovery, and she filed a renewed motion for sanctions and request for entry of default judgment in February 2022. On April 4, 2022, the West Virginia Court found bad faith by the defendants based on a continued pattern of non-disclosures and granted default judgment as a sanction for the discovery abuse. Although this order is entitled "Order Granting Default

Judgment," it includes no finding of liability for any claim or award of damages. By itself, it creates no debt owed to Ms. Mey by Mr. Thompson. Instead, its focus was on the discovery abuse, and it is more akin to an entry of default rather than a default judgment. The West Virginia Court reserved the determination of the number of statutory violations and appropriate damages for a jury trial.

Ms. Mey subsequently relinquished her demand for a jury trial and asked the West Virginia Court to enter judgment and determine damages based on the record. On July 5, 2022, the West Virginia Court granted that motion and entered an order entitled "Order Granting Judgment," which is hereinafter referred to as the "Default Judgment." This is the only order entered by the West Virginia Court that addresses Mr. Thompson's liability and damages.

The West Virginia Court found that 180 calls violated the TCPA and 104 calls violated the WVCCPA. It awarded statutory penalties of $500 per violation under the TCPA, for a total of $90,000, which the court then trebled based on a finding that the violations were willful and knowing. The total penalty award was $270,000.

For the WVCCPA damages, the West Virginia Court awarded the maximum penalty of $5,373.09 per call for total penalty award of $558,801.36.

After entry of the Default Judgment, the West Virginia Court entered two orders awarding attorneys' fees under the WVCCPA, one for pre-appeal fees of $448,595 and another for post-appeal fees of $200,965.56.

The total amount that Ms. Mey requests the Court hold to be nondischargable is $1,478,361.92.

## DISCUSSION

**Summary Judgment Standard**

A movant is entitled to summary judgment upon a showing that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. In reviewing a motion for summary judgment, the court views the evidence, all facts, and any inferences

drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013).

**Collateral Estoppel / Issue Preclusion**

Ms. Mey alternatively argues that the West Virginia Court found willful and malicious injury by Mr. Thompson or that this Court should infer willful and malicious injury based on the West Virginia Court's findings. In either case, Ms. Mey argues Mr. Thompson is precluded from relitigating the issue of willful and malicious injury pursuant to 11 U.S.C. § 523(a)(6).

Generally, collateral estoppel or "[i]ssue preclusion prevents a party from relitigating issues of fact or law actually litigated and decided in a prior proceeding." *In re Berge*, 953 F.3d 907, 916 (6th Cir. 2020). For the applicable standard or test for issue preclusion, the court looks to the underlying judgment. When the judgment is from a federal court applying federal law, federal preclusion law applies. When, as in this case, the federal court also decides an issue of state law based on supplemental jurisdiction, whether to apply federal or state law to the supplemental claim is not settled in the Sixth Circuit. *Id*. However, when federal and state law are in line, the Court need not decide between the two. *See id*. at 917 ("Whether we apply federal or [state] issue-preclusion law is thus of little practical concern in this case; the tests are nearly the same."). Such is the case here.

In this case, the Default Judgment includes determinations of liability under federal and West Virginia state law. The tests for issue preclusion under federal and state law are substantially similar.

Under federal law, issue preclusion applies when:

(1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation,

(2) the issue was actually litigated and decided in the prior action,

(3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation,

(4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and

(5) the party to be estopped had a full and fair opportunity to litigate the issue.

*Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005), cited in *Berge*, 953 F.3d at 917.

Under West Virginia law, issue preclusion applies if:

(1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Bruce McDonald Holding Co. v. Addington, Inc.*, 825 S.E.2d 779, 789 (W. Va. 2019) (quoting *State v. Miller*, 459 S.E.2d 114, 120 (W. Va. 1995)). The issue must also have been essential to the judgment. *Miller*, 459 S.E.2d at 120 ("[C]ollateral estoppel requires identical issues raised in successive proceedings and requires a determination of the issues by a valid judgment to which such determination was essential to the judgment.").

The federal and state standards for issue preclusion are the same with respect to the deciding elements in this case: that the issues be (i) identical and (ii) necessary and essential to the judgment.

For purposes of summary judgment, Mr. Thompson does not dispute that he was a party to the prior litigation, that he had full and fair opportunity to litigate, or that the Default Judgment is a final adjudication on the merits. Mr. Thompson argues that the issues the West Virginia Court determined were not identical to the issue this Court must determine: whether the debt is from a "willful and malicious injury by the debtor" under 11 U.S.C. § 523(a)(6).

To determine the similarity of the issues, the Court must compare the standard for nondischargeabilty under § 523(a)(6) with the standards for liability under the provisions of the TCPA and WVCCPA that the West Virginia State Court found to have been violated.

**11 U.S.C. § 523(a)(6)**

11 U.S.C. § 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." This section is interpreted as requiring "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). To meet the Bankruptcy Code's standard for willfulness, a defendant must have acted with subjective intent to harm or with substantial certainty that harm would occur. *Berge*, 953 F.3d at 917. "Malicious" is interpreted to mean "in conscious disregard of one's duties or without just cause or excuse." *Id.* at 920 (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (citations omitted)). Taken together, "[a] debtor willfully and maliciously injures a creditor if, acting without just cause or excuse, he knows or is substantially certain that his actions will cause injury." *In re Boland*, 946 F.3d 335, 338 (6th Cir. 2020).

Neither willfulness nor malice, according to the Bankruptcy Code's meanings, were findings necessary and essential to the Default Judgment. For issue preclusion to apply, the TCPA or the WVCCPA would need to require an intent to harm and that the defendant acted with conscious disregard of his duties or without just cause or excuse. Neither of these findings are required for liability under the applicable provisions of the TCPA or the WVCCPA.

Ms. Mey has emphasized that the West Virginia Court's Default Judgment must be considered in the context of the allegations made by Ms. Mey. It is true that the "legal effect of a default judgment is that the defendant is deemed to have admitted "'the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'" *Mey v. Phillips*, 71 F.4th 203, 223 (4th Cir. 2023) (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975))). However, in this case, not only were intent to harm and malice not necessary for liability under any of the applicable telemarketing statutes, Ms. Mey did not even allege intent to harm or

malice in her Second Amended Complaint. Therefore, the deemed admissions do not buttress Ms. Mey's argument for issue preclusion since the allegations that could be deemed admitted were geared toward meeting the test for the robocall statutes, not the different and generally tougher standard for determining nondischargeability.

**Telephone Consumer Protection Act**

The West Virginia Court found 180 violations of the TCPA. It did not elaborate as to the basis for each violation. Ms. Mey alleged that defendants violated multiple provisions of the TCPA, none of which requires a finding of intent to injure or that a defendant act in conscious disregard of one's duties or without just cause or excuse.

Ms. Mey alleged that defendants violated 47 U.S.C. § 227(b)(1)(A), 47 U.S.C. § 227(b)(1)(B), 47 C.F.R. § 64.1200(d)(1), and 47 C.F.R. § 64.1200(d)(4). These statutes and regulations either prohibit the making of certain types of calls using artificial or prerecorded-voice or require certain conduct in relation to calls using artificial or prerecorded-voice.

For example, 47 U.S.C. § 227(b)(1)(B) makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party," with very limited exceptions. 47 C.F.R. § 64.1200(d)[1] prohibits "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." The procedures must include a written policy for maintaining a do-not-call list and they require the caller to make that policy available on demand. § 64.1200(d)(1). The callers must also clearly identify themselves with certain information. § 64.1200(d)(4).

The TCPA provides a private right of action for violation of § 227(b) or related regulations. It is a strict liability statute with no requirement of intent for there to

---

[1] Referencing the version in effect at the time of the Second Amended Complaint.

be liabilty.  *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 892 (E.D. Mich. 2012).

Not only is there no requirement of proof of intent to injure, but a plaintiff is not even required to show an injury.  The TCPA allows for the recovery of "actual monetary loss from such a violation" or statutory damages of $500 for each violation, whichever is greater.  47 U.S.C. § 227(b)(3), § 227(c)(5).  Ms. Mey opted for, and the West Virginia Court awarded, statutory damages of $500 per violation.

The only point at which intent was relevant for Ms. Mey's TCPA claim was for treble damages. The TCPA provides that "[i]f the court finds that the defendant willfully or knowingly violated" the statute or regulations, the court may increase the award to up to three times the damage amount. 47 U.S.C. § 227(b)(3)(C).

The West Virginia Court did treble the damages and, in doing so, did make a finding that the defendants' actions were "willful and knowing."  However, the willfulness standard under the TCPA treble damages provision differs from the standard for nondischargeabilty under the Bankruptcy Code.  "[T]he intent for treble damages does not require any malicious or wanton conduct, but rather is satisfied by merely "knowing" conduct." *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011).  Knowing conduct under the TCPA is knowledge that one's actions violate the statute.  *See Harris*, 867 F. Supp. 2d at 895.  In contrast, willfulness under § 523(a)(6) requires intent to injure.

The issues determined by the West Virginia Court to find liability and award damages under the TCPA are not identical to those this Court must determine to declare the damages nondischargeable under 11 U.S.C. § 523(a)(6).  Therefore, this section of the Default Judgment does not preclude Mr. Thompson from contesting that the debt was for "willful and malicious injury," as used in § 523(a)(6).

**West Virginia Consumer Credit and Protection Act**

The West Virginia Court found that the defendants made 104 calls that violated the WVCCPA but did not specify which section of the act was violated.

Ms. Mey had alleged in her complaint that the defendants' conduct was unfair or deceptive and likely to create confusion or misunderstanding to any reasonable consumer and did create such confusion and misunderstanding by Ms. Mey.

Ms. Mey claimed that defendants' actions violated W. Va. Code Ann. § 46A-6F-501, which makes it "an unfair or deceptive act or practice" for any seller or telemarketer to "engage in any other unfair or deceptive conduct which will create a likelihood of confusion or misunderstanding to any reasonable consumer." § 46A-6F-501(5).[2]

Ms. Mey also alleged that defendants violated § 46A-6F-601(a), subsections (1), (2), (3) and (5), which provide:

> (a) It is an abusive telemarketing act or practice and a violation of this article for any telemarketer to engage in the following conduct:
>
> (1) Threaten, intimidate or use profane or obscene language;
>
> (2) Engage any person repeatedly or continuously with behavior a reasonable person would deem to be annoying, abusive or harassing;
>
> (3) Initiate an outbound telephone call to a person when that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the telemarketer whose goods or services are being offered;
>
> or
>
> (5) Engage in any other conduct which would be considered abusive to any reasonable consumer.

W. Va. Code Ann. § 46A-6F-601(a)(1), (2), (3) and (5).

The West Virginia Code makes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful. W. Va.

---

[2] Ms. Mey also claims in her Second Amended Complaint that defendants' actions violated W. Va. Code Ann. § 46A-6F-501(8), which makes it an unfair or deceptive act for a seller or telemarketer to "engage in any "unfair methods of competition and unfair or deceptive acts or practices" as specified in § 46A-6-102(f) of this code and made unlawful by the provisions of § 46A-6-102 of this code." There is no § 46A-6-102(f) currently, but in prior versions of the statute, section 102(f) listed acts deemed to be "unfair or deceptive acts." *Orlando v. Fin. One of W. Virginia, Inc.*, 369 S.E.2d 882, 887 (W. Va. 1988). That definition and list of acts is now found in § 46A-6-102(7), which includes "[e]ngaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding," the same as § 46A-6F-501(5). None of the prohibited conduct refers to any intent to cause injury.

Code Ann. § 46A-6-104. Simply performing the act is a violation of the law, with no requirement for proof of intent to harm or that defendant acted in conscious disregard of his duties or without just cause or excuse. This strict liability approach that permeates the telemarketing statutes is a critical distinction from the type of intent required for nondischargeablity.

The WVCCPA allows a consumer to recover actual damages and the right to a penalty if a telemarketer violates § 46A-6F-601. W. Va. Code Ann. § 46A-6F-701(a). The penalty may be "not less than one hundred dollars nor more than three thousand dollars," adjusted for inflation. *Id.* The statute does not provide any standard for a court to consider in determining the amount of penalty.

The West Virginia Court awarded penalties for each of the 104 calls that violated § 46A-6F-601. It was not necessary for the court to find intent to harm or that defendant acted in conscious disregard of his duties or without just cause or excuse; the court only needed to find a violation and then use its discretion to determine the amount of the penalty.

There simply is no identity of issues between the section of the WVCCPA found by the West Virginia Court to have been violated by Mr. Thompson and the determination to be made by this Court -- whether the debt is for willful and malicious injury by the debtor to Ms. Mey pursuant to 11 U.S.C. § 523(a)(6).

**Whether Willful and Malicious Injury Can Be Inferred**

Ms. Mey would also have the Court infer that the Default Judgment debt arises from willful and malicious injury based on the factual findings of the West Virginia Court. While the Court "may infer the facts required to support a judgment of nondischargeability — including [intent] — from the totality of the circumstances described in a state court's findings," *In re Anthony*, 648 B.R. 556, 573 (Bankr. S.D. Ohio 2023), the court must still view the facts and any inferences drawn therefrom in the light most favorable to the nonmoving party when ruling on summary judgment, *Matsushita.* 475 U.S. at 587.

Ms. Mey primarily argues that the West Virginia Court's findings of discovery violations in support of the default sanction are sufficient to demonstrate willfulness and malice on the part of the defendants. Although these findings led to the entry of a default judgment as sanction,[3] they were not necessary or essential to the West Virginia Court's determination of liability and damages for the debt at issue in this case, which is a requirement for issue preclusion. The monetary debt for which Ms. Mey seeks a nondischargeability determination are damage awards and attorneys' fees for violation of the TCPA and the WVCCPA. Ms. Mey has to prove that Mr. Thompson behaved willfully and maliciously with respect to this debt.

Ms. Mey is essentially asking this Court to allow findings by the West Virginia Court about discovery abuses to bleed over into the dischargeability issues. While some of the discovery abuses may reflect on the character of the defendants or their lawyers, they do not shed light on the actions that gave rise to the debt that is sought to be nondischargeable. It is worth stating once more that no actual monetary obligation arose from the sanctions over discovery. A finding of nondischargebility under § 523(a)(6) must be based on a "*debt* ... for willful and malicious injury," not merely distasteful, obnoxious, or offensive litigation tactics that give rise to no monetary sanction and thus no separate debt.

Ms. Mey also directs the Court to what she characterizes as "explicit reasoning for awarding the maximum statutory penalties." (Reply Brief, Doc. 16, p. 2.) That reasoning was:

> Ms. Mey pled that the acts of defendants or their agents were willful and/or knowing, and like other allegations upon default, these facts are accepted as true.
>
> Defendants' conduct justifies maximum penalties under the WVCCPA. All of the following allegations are established: Defendants phoned Ms. Mey repeatedly despite her registration on the Do Not Call registry; Defendants continued to call Ms. Mey after at least 9 attempts to stop their calling; the calls were misleading; agents on some occasions

---

[3] In contrast, in *Anthony*, a case on which Ms. Mey relies, the debt was for a monetary sanction of attorneys' fees. 648 B.R. 556.

> became belligerent and hung up on Ms. Mey; agents made repetitive calls within an hour; and calls continued over a span of three years and even after litigation in this case was filed.
>
> …
>
> The calls are part of a [sic] ongoing systematic scheme. Defendants were on notice to stop their calling and continued throughout this proceeding.

(Default Judgment, Doc. 13-8, p. 10-11.)

These findings relate only to the WVCCPA portion of the Default Judgment and the West Virginia Court's determination of what amount of per-call penalty to award between the minimum of $100 and what it determined to be the maximum of $5,373.09 after inflation. The standard the West Virginia Court considered in deciding how much to award was: "the frequency and persistence of noncompliance …, the nature of such noncompliance, and the extent to which such noncompliance was intentional[.]" *Waddell v. Cap. Accts., LLC*, No. 2:19-CV-00122, 2019 WL 5792865, at *4 (S.D.W. Va. Nov. 5, 2019) (referring to the WVCCPA's federal corollary, the FDCPA, for the applicable standard). "Intent to cause injury" was not part of the West Virginia Court's stated standard.

The Court is not persuaded that the West Virginia Court's findings alone satisfy § 523(a)(6)'s requirement that Mr. Thompson intended to cause Ms. Mey injury. The findings are either vague or not as indicative of intent to harm as they may at first seem when considered in the light most favorable to Mr. Thompson.

Based on the Default Judgment, there were at least 180 calls. The 180 calls that violated the TCPA may include some or all of the 104 calls that were found to violate the WVCCPA. The "repeated" nature of the calls made an impression on the West Virginia Court in setting the penalty amount, and the Court does not doubt that Ms. Mey found them to be frustrating and annoying. However, considering that the 180 calls were placed over a period of three years (1,095 days), the numbers simply do not dictate a finding of intent to injure Ms. Mey.

The West Virginia Court also found that the calls were misleading, but it did not explain how. Looking to the First Amended Complaint for context, Ms. Mey had

alleged that the calls were misleading in that the callers did not fully disclose who they were and all the affiliated companies they represented. She alleges the calls were "confusing and misleading as to the caller's identity." Ms. Mey has not explained why a lack of full disclosure of the caller's identity would harm her, other than through the strict liability imposed by the TCPA. It is conceivable that callers did not know all the layers of corporate ownership. If that were the case, the nondisclosure does not tend to indicate an intent to harm Ms. Mey. With inferences in favor of Mr. Thompson on summary judgment, these allegations and findings do not dictate a conclusion that Mr. Thompson intended to cause Ms. Mey injury.

The West Virginia Court also found that "on some occasions," agents became belligerent and hung up on Ms. Mey. "Some" is a vague adjective. This Court has no basis for knowing if this occurred three times or 100 times. The West Virginia Court also found that agents made repetitive calls within an hour, but again this finding is imprecise since it is unclear how often this occurred or how many calls were made within the hour.

These limited and sometimes vague findings of the West Virginia Court are insufficient for this Court to infer that the debt for $1,478,361.92 is nondischargeable at this stage of the proceedings.

## CONCLUSION

For the reasons stated, summary judgment is denied, and an appropriate order will be entered.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.